UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

Edward Bababekov,

              Plaintiff,

     v.

Long Island Railroad Company,

          Defendant.

-----------------------------------------------------------X

<u>MEMORANDUM & ORDER</u>
03-CV-3477 (NGG)(KAM)

**NOT FOR PUBLICATION**

GARAUFIS, United States District Judge.

      In this suit, Edward Bababekov ("Plaintiff"), an employee of the Long Island Railroad

Company ("Defendant" or "LIRR"), brings a personal injury action pursuant to the Federal

Employers' Liability Act, 45 U.S.C. § 51, <u>et</u> <u>seq.</u> ("FELA"), for back injuries sustained while

employed by the LIRR.  At this time, the court considers Defendant's motion for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons set forth

below, the Defendant's motion is granted in part and denied in part.

**I.**     **Facts**

      The following facts are not in dispute.  Plaintiff is employed by the LIRR as a Signal

Inspector**.**  On June 5, 2000, while in the course of his employment, Plaintiff injured his back

while throwing a track switch.  (Defendant's Local Rule 56.1 Statement ("Def. 56.1 Stmt.") ¶ 2;

Plaintiff's Rule 56.1 Statement ("Pl. 56.1 Stmt.") ¶ 2).  Immediately after the accident, Plaintiff

reported that the switch was hard to throw and that as a result he felt pain in his back.  (Def. 56.1

Stmt. ¶ 3; Pl. 56.1 Stmt. ¶ 3).  Following the accident, Plaintiff presented himself to the LIRR

Medical Department and reported pain located at his lower back.  (Def. 56.1 Stmt. ¶ 4; Pl. 56.1

Stmt. ¶ 4). He was seen by John Aquilino, a physician's assistant employed by the LIRR. (Declaration of Sean P. Constable ("Constable Decl.") Ex. G. (Deposition of John Aqilino ("Aquilino Dep.") at 36)). Aquilino diagnosed the Plaintiff with a lumbosacral sprain and advised him to rest for 48 hours, to use ice packs, and to contact his personal doctor for a second opinion or for any prescription medication. (Id. at 19-20). Aquilino directed the Plaintiff to return for a follow-up exam on June 8, 2000. (Id. at 20).

In the interim, the Plaintiff visited his primary physician, Dr. Gavriel Fuzalov, on June 6, 2000. Dr. Fuzalov determined that Plaintiff was unable to work at the time due to the back injury. (Def. 56.1 Stmt. ¶ 8; Pl. 56.1 Stmt. ¶ 8). When the Plaintiff reported back to the LIRR Medical Facility for his follow-up exam on June 8, 2000 he informed Aquilino that Fuzalov had recommended return to work status on June 16, 2000. (Id. at 23). At the June 8th appointment, Aquilino carried over the Plaintiff's previous diagnosis of lumbosacral sprain. (Id. at 26).

Plaintiff was seen for subsequent follow-up examinations at the LIRR Medical Facility on June 12, 2000 and June 27, 2000. (Def. 56.1 Stmt. ¶ 6; Pl. 56.1 Stmt. ¶ 6). On June 12, 2000, the Plaintiff was again seen by Aquilino. After examining him, Aquilino determined that he was "slightly worse" than the last visit but maintained the same diagnosis, testifying that "when you have lumbosacral sprain, it can act up and give you pain, different levels of pain at different times when you're recuperating." (Id. at 31). The Plaintiff was returned to restricted work duty on June 16, 2000. (Id. at 32). Aquilino next saw the Plaintiff on June 27, 2000. (Aquilino Dep. at 33-34). After that examination, Aquilino directed the Plaintiff to return to full work duty on the next day, June 28, 2000. (Id. at 35).

To summarize, in accordance with the directives of his personal doctor and the LIRR

medical staff, Plaintiff did not work from June 6, 2000 through June 15, 2000. From June 16, 2000 through June 27, 2000, Plaintiff was authorized to work "restricted duty" with limitations on bending, twisting, lifting and climbing. (Def. 56.1 Stmt. ¶ 9; Pl. 56.1 Stmt. ¶ 9). On June 28, 2000, Plaintiff returned to work on full unrestricted duty, which he continued through October 2, 2000. During this time period he did not visit the LIRR Medical Facility for any reason. (Def. 56.1 Stmt. ¶ 10; Pl. 56.1 Stmt. ¶ 10).

In September 2000, the Plaintiff was reassigned to work at the LIRR's West Side Yard, a job that Plaintiff maintains was more physically challenging than his previous positions and which involved intensive physical labor. (See Plaintiff's Deposition ("Pl.'s Dep.") at 25-26, 28-29). Prior to September 23, 2000, Plaintiff again visited his primary physician, Dr. Fuzalov, with complaints of back pain. At Dr. Fuzalov's direction, on September 23, 2000 he underwent an MRI, which showed that he had two centrally herniated disks. (See Dinhofer Decl. Ex. 5 ).[1] On October 2, 2000, Plaintiff returned to the LIRR Medical Facility to report pain in his back with radiation into the lower extremities. (Def. 56.1 Stmt. ¶ 11; Pl. 56.1 Stmt. ¶ 11). The Plaintiff told Aquilino that "he started having back pain again since the week before." (Aquilino Dep. at 36).[2]

_____

[1] The record is not clear as to when the Plaintiff saw Dr. Fuzalov or when he underwent the MRI which diagnosed the herniated disks. Plaintiff testified that he saw Dr. Fuzalov "in September." (Pl.'s Dep. at 25). The medical records of the doctors at the LIRR Medical Facility note that the Plaintiff informed them that he had an MRI performed on September 29, 2000. (See, e.g., Constable Decl. Ex. D (Progress Notes of LIRR Medical Facility R.N.); Aquilino Dep. at 36). However, the actual records of the MRI indicate that it occurred on September 23, 2000. (See Declaration in Opposition of Philip J. Dinhofer ("Dinhofer Decl.") Ex. 5). Given that the actual records indicate that the MRI took place on September 23, 2000, I find this to be the date of the MRI for the purposes of this motion.

[2] In his deposition, the Plaintiff testified that he saw Dr. Fuzalov in September "[b]ecause it happened again." (Pl.'s Dep. at 25). He explained further: "It was a reoccurrence of my back,

The Plaintiff saw Aquilino for a follow-up on October 6, 2000. On that date, Aquilino had reviewed the results of the Plaintiff's MRI which diagnosed "narrowed L4, L5 with central herniation." (Aquilino Dep. at 39). Following his October 6, 2000 visit, the Plaintiff was referred to physical therapy for his back, which he participated in during the subsequent months. (Id. at 45, 47-49). The Plaintiff also engaged in a work hardening program to prepare him for return to work from November 29, 2000 through January 26, 2001. (Id. at 50). The Plaintiff ultimately returned to full duty status on January 29, 2001. (Id. at 46).

According to the testimony of Dr. James Tremeroli, a physician employed by the LIRR, who reviewed the Plaintiff's medical records as presented to the LIRR Medical Facility, Plaintiff's herniated disks were not the result of the Plaintiff's initial injury in June 2000, but rather the back sprain and herniated disks were "two separate incidents." (Dinhofer Decl. Ex. 3 (Deposition of James Tremeroli, M.D. ("Tremeroli Dep.") at 62, 66-68). In his deposition, Dr. Tremeroli explained as follows:

Q:     Would it be reasonable to conclude that the herniated disk that's found by the MRI occurred sometime after [the Plaintiff's] return to work on June 28th of 2000 and prior to the MRI of September 29th?[3]

A:     Yes.

      *      *      *      *      *      *

Q:     In Mr. Bababekov's case, as he presented on October 2nd of 2000, could we reasonably conclude that the spasms he had at that time was a sign of an acute injury?

---

of my back pain. And this time it felt really serious and I just went there and – you know." (Id.).

[3] Again, the Court notes that it is unclear whether the MRI occurred on September 23rd or 29th, but presumes that the correct date is September 23, 2000 notwithstanding this deposition testimony.

A:    Looking through the record review only, I would have to say that this appears to be a new problem, pretty much unrelated from the first in that the first was a sprain/strain.  He got better within a week as many people do with sprain/strain.  Here something else went on where he complained of the symptoms with the pain and numbness going down into the feet, so it's a different mechanism.

Q:    Based on the presentation of the numbness in the feet and what have you and the spasm, would it be your conclusion, to a reasonable degree of medical certainty, that Mr. Bababekov sustain[ed] a herniated disk sometime prior to the presentation on October 2nd but after June 28th of 2000?

A:    Yes.

Q:    In your opinion, to a reasonable degree of medical certainty, is there any relationship between the injury which he presented with on October 2nd of 2000 to that which he had presented with in June of 2000.

A:    One could say with a reasonable degree of medical certainty that they were two separate issues.

(Tremeroli Dep. at 62, 66-68).

Plaintiff filed this suit on July 16, 2003 alleging three causes of action under FELA. Specifically, the Plaintiff alleges in his first and third causes of action that the Defendant's negligence in failing to provide him with  a safe work environment caused him to sustain injury on June 5, 2000 (Compl.  ¶¶ 7,8) and again on October 2, 2000.  (Compl. ¶¶ 23-25).  The Plaintiff also asserts in his second cause of action a claim for negligent work assignment, alleging that through June 6, 2000 and October 2, 2000 the Defendant's negligence in directing the Plaintiff to return to work without accommodating his physical limitations resulting from the June 5, 2000 incident caused the Plaintiff to sustain further injury.  (Compl. ¶¶ 15-17).

The Defendant has moved for summary judgment on the grounds that the Plaintiff's claims are barred by FELA's three year statute of limitations.  See FELA, 45 U.S.C. § 56.

## II.  Summary Judgment Standard

Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party carries the burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In deciding a motion for summary judgment, the court must construe the facts in the light most favorable to the non-moving party, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and all reasonable inferences and ambiguities must be resolved against the non-moving party.  Flanigan v. Gen. Elec. Co., 242 F.3d 78, 83 (2d Cir. 2001).  Where there are no such genuine issues of fact, and all facts, inferences, and ambiguities are construed in favor of the non-moving party, summary judgment for the moving party is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Mack v. Otis Elevator Co., 326 F.3d 116, 119-20 (2d Cir. 2003) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III.  Discussion

### A.  FELA

Under the Federal Employers' Liability Act, a railroad engaged in interstate commerce is liable to "any person suffering injury while he is employed by [the railroad] . . . resulting *in whole or in part* from the negligence of [the railroad]."  45 U.S.C. § 51 (emphasis added).  FELA is a remedial statute, intended to be liberally construed to achieve Congress's objectives in providing broad remedies to railroad employees for injuries sustained during the course of employment.  See Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 562 (1987); Goldwater v. Metro-North Commuter R.R., 101 F.3d 296, 298 (2d Cir. 1996).  Indeed, remedies

under FELA have been interpreted to be broader than those available under principles of

common-law negligence.   As the Supreme Court has stated:

> [I]n interpreting the FELA, we need not depend on common-law principles
> of liability.  This statute, an avowed departure from the rules of the
> common law, was a response to the special needs of railroad workers who
> are daily exposed to the risks inherent in railroad work and are helpless to
> provide adequately for their own safety.

Sinkler v. Missouri Pac. R.R. Co., 356 U.S. 326, 330 (1958) (internal citation omitted); see also,

Ulfik v. Metro-North Commuter R.R., 77 F.3d 54, 58 n.1 (2d Cir. 1996) ("Though the issue of

negligence [in a FELA case] is still governed by the common law requirement of foreseeability . .

. the concept of foreseeability has been construed somewhat more liberally in FELA cases than it

might otherwise be under common law.").

Moreover, the court is mindful that in a FELA case the jury plays an amplified fact-

finding role.  "It is well established that the role of the jury is significantly greater in . . .  FELA

cases than in common law negligence actions." Johannessen v. Gulf Trading & Transp. Co., 633

F.2d 653, 656 (2d Cir. 1980); see also Gallose v. Long Island R.R. Co., 878 F.2d 80, 84 (2d Cir.

1989).  The standard for establishing a prima facie FELA negligence claim is that "'the proofs

justify with reason the conclusion that employer negligence played any part, *even the slightest*, in

producing the injury . . . for which damages are sought.'" Diebold v. Moore McCormack Bulk

Transport Lines, Inc., 805 F.2d 55, 57 (2d Cir. 1986) (emphasis in original) (quoting Rogers v.

Missouri Pacific R.R. Co., 352 U.S. 500, 506 (1957)).  "This low and liberal standard . . .  works

in favor of submission of issues to the jury in such cases rather than toward foreclosure through a

directed verdict or judgment n.o.v." Diebold, 805 F.2d at 58.

Notwithstanding the foregoing, on the motion now before the court the merits of the

Plaintiff's substantive claim for relief under FELA are not at issue. Rather, the issue before the court is one of timing, namely the times at which the Plaintiff's causes of actions accrued. FELA provides that "[n]o action shall be maintained . . . unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. As a general proposition, the accrual point for a personal injury claim under FELA is the moment the injury occurs:

> When the nature of the injury is such that it manifests itself immediately, its symptoms are immediately detectable, and the plaintiff is aware of his condition and the alleged wrongful act which caused it almost from the instant the injury is inflicted, – though he may not always know the extent of his disability he is in no doubt that he was injured, – and where that knowledge exists on the occurrence of the injury there is an immediate accrual of the cause of action and the statutory period begins at that time.

Reat v. Ill. Cent. R.R. Co., 197 N.E.2d 860, 863-64 (Ill. App. Ct. 1964); see also Taylor v. Consol. Rail Corp., No. 99-CV-146, 2000 WL 246274, *1 (N.D.N.Y. 2000) (In deciding a summary judgment motion on FELA claim, "[t]he time the cause of action accrues is obvious when the injury occurred on a date certain.").

The Second Circuit addressed the question of the FELA accrual point in Mix v. Del. & Hudson Railway Co., Inc., 345 F.3d 82 (2d Cir. 2003), and distinguished between so-called "traumatic" injuries and "gradual" injuries. Mix, 345 F.3d at 88. In Mix, the circuit court explicitly recognized the Supreme Court's adoption of the discovery rule in FELA cases:

> With respect to "gradual injuries" – those which occur gradually over long periods of time, due to ongoing exposure to harmful working conditions – the Supreme Court has adopted a discovery rule and held that the FELA statute of limitations accrues when the injury manifest[s] itself, taking into account whether the plaintiff should have known of his injury. . . . Thus, an FELA action accrues when the plaintiff in the exercise of reasonable diligence knows both the existence and the cause of his injury.

Id. at 86 (alteration in original) (internal quotation marks and citations omitted). In Mix,

however, the court of appeals went on to consider whether a plaintiff will be barred by the statute

of limitations when he alleges a gradual injury based on injuries sustained during the three-year

period preceding the filing of the FELA claim.  On this question, the court noted that, because it

is often difficult to determine the existence and cause of a gradual injury, "[d]espite the apparent

simplicity of the discovery rule, its application does not necessarily function in the context of

gradual injuries." Id. at 87-88.  Nonetheless, the Second Circuit rejected the argument that the

continuing tort doctrine[4] tolls the statute of limitations in FELA cases.  Id. at 89-90.

The Mix court also refused to allow a distinct cause of action under FELA for

"'aggravation' of an existing, gradual, injury which occurs during the three-year period preceding

the suit . . . to the extent that the claim for aggravation is based upon negligence of which the

plaintiff was aware over three years before the suit." Id. at 90.  The Court of Appeals held as

follows:

> [A] plaintiff can recover for injuries suffered during the three-year period
> preceding the suit, if these injuries are sufficiently distinct from those
> previously suffered.  A plaintiff can also recover for aggravation to existing
> injuries, provided that the aggravation was caused by a distinct act of
> negligence whose existence and relationship to the injury was unknown prior
> to the three-year period preceding the suit.

Mix, 345 F.3d at 90.

Relying primarily on Mix and the rules it sets forth, the Defendant urges dismissal of the

Plaintiff's claims.  I will address each of the Plaintiff's three causes of action in turn.

**B.    Plaintiff's First Cause of Action: June 5, 2000 Injury**

Plaintiff's first cause of action alleges negligence on the part of the Defendant resulting in

---

[4] Under the continuing tort doctrine, the cause of action accrues on the date of the last
injury and recovery for the entire period of the employer's negligence is permitted if an act
contributing to the claim occurs within the filing period.  See Mix, 345 F.3d at 88.

a back injury sustained on June 5, 2000 when the Plaintiff threw a track switch. The June 5, 2000 incident is unquestionably a "traumatic" injury – it occurred on a date certain – and thus the cause of action accrued on that date. Therefore the limitations period began to run on this claim on June 5, 2000, the date of accrual. As Plaintiff filed this action on July 16, 2003, there is no dispute that the claim was filed beyond the three-year limitations period.

The Plaintiff argues, however, that his claim is not time-barred because the defendant, based on principles of equity, should be estopped from raising a limitations defense. In Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231 (1959), the Supreme Court considered a FELA claim seeking to recover damages for an industrial disease the petitioner had allegedly contracted while in the respondent's employ. The petitioner filed suit more than three years after his employment ended, and the respondent raised a statute of limitations defense. See Glus, 359 U.S. at 231-32. Plaintiff urged, and the Supreme Court agreed, that respondent was estopped from raising the limitations defense because the respondent had induced the petitioner's delay in filing suit by representing to the petitioner that he had seven years in which to sue. The Court declared, "[t]o decide the case we need look no further than the maxim that no man may take advantage of his own wrong," id. at 232, and determined that the doctrine of equitable estoppel properly applied in FELA cases. Id. at 235. The Supreme Court held:

> Despite the delay in filing his suit petitioner is entitled to have his cause tried on the merits if he can prove that respondent's responsible agents, agents with some authority in the particular matter, conducted themselves in such a way that petitioner was justifiably misled into a good-faith belief that he could begin his action at any time within seven years after it accrued.

Id. at 763.

In the instant case, Plaintiff argues that the Defendant, through the LIRR Medical

Facility's doctors and physician assistants, misinformed the Plaintiff and "led [him] to believe that he had suffered a minimal non-permanent injury to his lower back." (Plaintiff's Memorandum of Law in Opposition ("Pl.'s Mem. Opp'n") at 13). Despite the Plaintiff's arguments to the contrary, the holding of <u>Glus</u> does not warrant application of equitable estoppel to save the Plaintiff's first cause of action. For application of the doctrine of equitable estoppel to extend the limitations period, <u>Glus</u> requires that the defendant (either intentionally or unintentionally) make misrepresentations upon which the plaintiff in good faith relies and acts upon, such that as a result he fails to commence his action within the statutory period. <u>See</u> <u>Mumpower v. S. Ry. Co.</u>, 70 F. Supp. 318, 319 (W.D.Va. 1967). Even assuming <u>arguendo</u> that the Defendant, through its agents, made misrepresentations to the Plaintiff concerning the extent of his injuries, equitable estoppel will not apply because there has been no showing that the defendant made statements upon which the Plaintiff relied which caused him to delay commencing his lawsuit. As one court has aptly explained:

> There is no allegation the defendant ever represented to [plaintiff that] he had 4, or 5, or 6, or more years in which to sue, – or represented or said anything on that subject, – and <u>Glus v. Brooklyn Eastern District Terminal</u>, <u>supra</u>, one of the principal cases relied upon by the plaintiff, is inapplicable to the allegations here concerned. None of the alleged acts of the defendant were of such a character as to prevent inquiry by [plaintiff] or to elude investigation by [plaintiff] or to really mislead [plaintiff]. He knew he had pain. He knew he was physically injured. He was not legally ignorant of the existence of his alleged cause of action. . . . There is no allegation the defendant induced [plaintiff] not to sue or to delay filing suit or hindered the commencement of suit.

<u>Reat</u>, 197 N.E.2d at 866.

As was the case in <u>Reat</u>, here the holding of <u>Glus</u> also does not apply, and I find there is no compelling reason to estop the Defendant from raising the statute of limitations defense. The

Plaintiff's cause of action arising from his injury sustained on June 5, 2000 accrued on that date.

Accordingly, the statute of limitations on the Plaintiff's first cause of action has run and

Defendant's motion for summary judgment as to this cause of action is hereby granted.

### C.  Plaintiff's Second Cause of Action: Negligent Work Assignment

In his second cause of action, the Plaintiff alleges that the Defendant negligently assigned

him to return to work beyond his known physical limitations, which caused the herniated disks

he subsequently suffered.  (Pl.'s Mem. Opp'n at 16).  The railroad can be found negligent "if it

knew or should have known that its assignment exposed the employee to an unreasonable risk of

harm."  Fletcher v. Union Pacific R.R. Co., 621 F.2d 902, 909 (8th Cir. 1980).

The Plaintiff asserts that the injury alleged in this cause of action – his herniated disk

injury – was a new injury that did not result from the June 5, 2000 incident, but rather was caused

by events that occurred between June 27, 2000 and October 2, 2000, the period when he returned

to work.  (See Pl.'s Mem. Opp'n at 16).  He further argues that because he did not discover this

new injury until September 23, 2000 at the earliest (the date on which he had the MRI from

which the diagnosis was made), it follows that his commencement of suit on July 16, 2003 is

timely.  (See id.).  The Plaintiff cites no case law to support his position, but only the allegation

that "Defendant knew that plaintiff was prematurely returned to work without the benefit of

either physical therapy or a work hardening program for his back."  (Id.).

Mix is controlling in holding that "an FELA action accrues when the plaintiff in the

exercise of reasonable diligence knows both the existence and the cause of his injury."  Mix, 345

F.3d at 86.  What is problematic with respect to this cause of action is that the Plaintiff alleges a

new and discrete injury which occurred at some point prior to September 23, 2000 and after June

27, 2000. Thus, the Plaintiff urges that a triable issue of fact exists as to when he knew of the existence of this injury. He asserts that he did not know of its existence until the MRI diagnosed him with herniated disks on September 23, 2000, which would bring the claim within the statutory limitations period.

The Defendant counters that the negligent work assignment claim is barred by the statute of limitations for the same reasons the Plaintiff's first cause of action is. The Defendant's position is that the Plaintiff knew both the cause and existence of the injury on June 5, 2000[5] when he initially injured his back and that there have been no misrepresentations by the Defendant warranting equitable estoppel. (See Defendant's Memorandum in Support ("Def.'s Mem. Supp.") at 5-6).

First, I hold that equitable estoppel under Glus does not apply to this cause of action for the same reasons it did not apply to Plaintiff's first cause of action, namely because there has been no evidence put forth to show that the Defendant made representations which justifiably caused the Plaintiff to delay filing his suit within the statutory period.

Nevertheless, the Plaintiff's negligent work assignment claim did not necessarily accrue on June 5, 2000 or on June 27, 2000. I read the Plaintiff's complaint to allege, at least in part, that the LIRR's decision to transfer him to work at the West Side Yard in September 2000 constituted a distinct act of negligence on the part of the Defendant, and that the intense physical labor he did there caused his herniated disk injury. The Plaintiff alleges that "defendant's medical department directed plaintiff to return to his work duties with the defendant railroad,

_____

[5] The Defendant actually asserts that the "latest time at which the statute of limitations began to run on plaintiff's second cause of action was June 27, 2000", the date on which he returned to full unrestricted work duty. (Def.'s Mem. Supp. at 5).

without any accommodation or restriction for his known physical limitations and/or disabilities, inclusive of those warranted and/or necessitated by reason of the accident and injuries incurred by plaintiff on June 5, 2000." (Compl. ¶ 15).

With respect to the Plaintiff's negligent work assignment claim,[6] the Defendant argues in its Memorandum of Law in Further Support of its Motion for Summary Judgment ("Def.'s Reply Mem.") that the instant case is factually analogous to the case of Weltevrede v. CSX Transp., Inc., 96-CV-862, 1997 U.S. Dist. LEXIS 21296 (W.D. Mich. Dec. 16, 1997), and thus summary judgment should be granted in Defendant's favor as it was in Weltevrede. Although I agree that the factual scenarios in the two cases are similar, I am not compelled to follow Weltevrede in the instant matter.[7]

In Weltevrede, the court granted summary judgment in favor of the defendant because it found that the plaintiff "ha[d] come forward with no evidence in support of his claim that the

---

[6] In its Reply brief, the Defendant addresses the Plaintiff's negligent work assignment claim as the Plaintiff's third cause of action. Throughout this M&O, I have referred to the negligent work assignment claim as Plaintiff's second cause of action and do so here. This discrepancy, however, supports my finding, discussed supra, that Plaintiff's second and third causes of action are effectively duplicative of one another and both allege negligent work assignment.

[7] Briefly, the facts of Weltevrede are as follows. The plaintiff was employed as a train engineer by the defendant, CSX, from 1973 through 1994. Between June and August 1993, the plaintiff was absent from work often. Despite the plaintiff's assertions that he was fully capable of working, he was directed by his supervisor to be seen by a physician. He was examined by a doctor on September 1, 1993 and found to be in good health and qualified to return to work without restriction. Weltevrede, 1997 U.S. Dist. LEXIS 21296, at *2. In February 1994, the plaintiff starting to feel stiffness in his upper back and shoulders, which he initially attributed to a new pillow. On February 28, 1994 he experienced numbness and partial paralysis and was subsequently diagnosed with a herniated cervical disk. Id. at *2-3. On October 25, 1996, the Plaintiff filed a FELA suit in which he alleged negligent work assignment, claiming that CSX was negligent during the fall of 1993 and beginning of 1994 for assigning him to work without restriction. CSX moved for summary judgment. Id. at *3.

railroad knew or should have known that he was susceptible to spinal cord injury and that he was physically unfit to work as a locomotive engineer." Weltevrede, 1997 U.S. Dist. LEXIS 21296, at *8. Welteverde failed to submit evidence sufficient to raise a triable issue of fact on whether the defendant had breached a duty to the plaintiff, whether his injury was caused by his work as an engineer, and whether it was foreseeable that he would have been injured as a result of the work assignment. Thus, the Michigan court found defendant entitled to judgment as a matter of law. Id. at *9-10.

Welteverde is distinguishable from the instant action in that here the Defendant moved for summary judgment on the grounds that the statute of limitations had run on the Plaintiff's claims. (See generally Def.'s Mem.). In its Memorandum of Law in Support of its Motion for Summary Judgment, the Defendant did not raise the merits of the Plaintiff's negligent work assignment claim, but only argued that the claim of negligent work assignment was precluded under Mix. (See Def.'s Mem. at 6-7). Admittedly, in his responsive brief, the Plaintiff made note of the elements necessary to make out a prima facie case under FELA and the basic law governing the merits of a negligent assignment of work claim. (See Pl.'s Mem. Opp'n at 9-11). However, in his argument, the Plaintiff addressed only the statute of limitations defense. (Id. at 16-17). It was only in the Defendant's Reply brief in *further* support of its motion, to which the Plaintiff did not have an opportunity to respond, that the Defendant asserted that it was entitled to judgment as a matter of law on the merits of the negligent work assignment claim. As the Plaintiff has not been afforded the opportunity to directly respond to the Defendant's argument that summary judgment is warranted on the merits, I find that this alone is reason to reject the Defendant's position.

Moreover, I am reminded of this Circuit's explicit preference to submit negligence questions to the jury for fact-finding in FELA actions.  See e.g., Syverson v. Consol. Rail Corp., 19 F.3d 824, 828 (2d Cir. 1994) (reversing grant of summary judgment in favor of defendant railroad in FELA action, noting that "[t]hin as this evidence is, it is enough under FELA . . . [and that] the case must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff"); Kelly v. Metro-North Commuter R.R., 37 F. Supp. 2d 233, 237 (S.D.N.Y. 1999) ("With respect to the traditional common-law negligence elements embodied in FELA, such as the elements of duty, foreseeability and causation, the proof requirements under FELA are substantially relaxed as compared with common-law negligence claims, so as to promote submission of FELA claims to a jury for decision.").  And, additionally, as the Defendant has moved for summary judgment, I am obligated to construe the facts in the light most favorable to the Plaintiff, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and to resolve all reasonable inferences and ambiguities against the Defendant.  Flanigan v. Gen. Elec. Co., 242 F.3d 78, 83 (2d Cir. 2001).

Given the above mentioned legal principles, and the fact that the merits-based argument was raised by the Defendant in its reply brief only, I am particularly hesitant to consider the merits of the Plaintiff's negligent work assignment claim on this motion for summary judgment. Accordingly, I will address only the statute of limitations issue.

Although the Plaintiff has cited no case law in his Memorandum in Opposition to Summary Judgment in support of his argument that the statute of limitations does not bar his second cause of action, I can discern that he may have relied on the Eighth Circuit case of

Fletcher v. Union Pacific R.R. Co., 621 F.2d 902 (8th Cir. 1980).[8]  In that case, the plaintiff

Fletcher was employed  by the defendant railroad as a sectionhand doing heavy labor.  He

suffered a back injury in 1962, was out of work and on restricted work duty for several months,

and then returned to his job as a sectionhand.  Fletcher, 621 F.2d at 904.  In 1964, after continued

back pain, he was diagnosed with lumbar disk syndrome.  He was discharged and released back

to work, where he continued until 1973 with several hospital visits and diagnoses between 1964

and 1973.  In 1973 a doctor recommended that Fletcher no longer work as a sectionhand as a

result of his back injuries; the railroad did not follow that recommendation.  Id. at 904-5.

Fletcher continued to work until December 1973, at which point he could no longer stand the

pain in his back.  He commenced a FELA suit in June 1977.  Id. at 905-6.

        The district judge dismissed Fletcher's cause of action for his March 1962 injury finding

it barred by the statute of limitations, which the circuit court affirmed.  With respect to his

negligent work assignment claim, the Eighth Circuit stated the following:

> The statute of limitations for the negligent assignment claim is distinguished
> from the claim for the original injury. Where injury results from a negligent
> act and the injury continues by reason of continued negligence, a recovery may
> be had for damages caused by the continuing negligence although a cause of
> action based on the original negligent act is barred.

Flecher, 621 F.2d at 907.  The Eighth Circuit went on to hold that the statute of limitations on

Fletcher's negligent work assignment was tolled until the defendant railroad's allegedly tortious

conduct ceased, in that case "until it assigned Fletcher to lighter work."  Id. at 908.

        On its face, the Fletcher opinion would seem to support the Plaintiff's negligent work

assignment claim in the instant action.  However, the Second Circuit explicitly rejected the

_____

        [8] The Plaintiff cites to Fletcher in support of his third cause of action, which, as will be
discussed supra, is primarily duplicative of his second claim.  (See Pl.'s Mem. Opp'n at 17).

reasoning and holding of <u>Fletcher</u> in <u>Mix</u>. <u>See Mix</u>, 345 F.3d at 88-89, n.2. There, as discussed above, the Second Circuit held the continuing torts doctrine does not apply in a FELA case because to do so would be inconsistent with the discovery rule, which the Supreme Court has held applicable in the FELA context. <u>Id.</u> The Second Circuit expressly noted that the Eighth Circuit was in the minority in applying the continuing torts doctrine to a FELA case, and explained its belief that the Eighth Circuit had done so by misinterpreting the holding of a Third Circuit case. <u>Id.</u> Therefore, inasmuch as the <u>Fletcher</u> case seems to support the Plaintiff's position, the Second Circuit has foreclosed that reliance.

I find, however, that the <u>Mix</u> decision does not foreclose the Plaintiff's second cause of action in its entirety. <u>Mix</u> held that "a plaintiff can recover for injuries suffered during the three-year period preceding the suit, if these injuries are sufficiently distinct from those previously suffered." Thus, to the extent that the Plaintiff suffered an injury distinct from his June 5, 2000 injury at some point subsequent to July 16, 2000 (three years before he filed suit), he would not be barred by the statute of limitations from bringing this claim.

The threshold question to be decided, therefore, is whether the Plaintiff has put forth evidence sufficient to raise a triable issue of fact concerning whether he learned the cause and existence of a discrete injury at some point after July 16, 2000. If the Plaintiff has done so, this claim will survive the Defendant's summary judgment motion.

Given the deposition testimony of Dr. Tremeroli, quoted above, I find that a triable issue of fact has certainly been raised as to whether the Plaintiff's herniated disk injury was a distinct injury from the back sprain he suffered on June 5, 2000. Moreover, I find that there is dispute as to when the Plaintiff knew the cause and existence of this injury. The Plaintiff has provided

18

evidence that would suggest that he did not suffer from this new injury until sometime in September 2000, when he was transferred to work at the LIRR's West Side Yard.

Thus, I find that there are triable issues of fact related both to whether the Plaintiff's herniated disk injury was a separate and distinct injury from that suffered on June 5, 2000, and as to whether the Plaintiff learned of the cause and existence of this injury within the 3-year filing period. Therefore, because genuine issues of material fact remain as to when the Plaintiff's negligent work assignment claim accrued, summary judgment on this claim is inappropriate. See BellSouth Telecommunications, Inc. v. W.R. Grace & Company-Conn., 77 F.3d 603, 609 (2d Cir. 1996) (noting that the genuine issue of a material fact standard will "apply whether summary judgment is granted on the merits of the claim, or on an affirmative defense such as the statute of limitations and a court "will refuse to grant summary judgment for the defendant if there is an issue of fact as to when the limitations period began") (internal quotation marks and citations omitted); Klein v. Auchincloss, Parker & Redpath, 436 F.2d 339, 341-42 (2d Cir. 1971) (reversing and remanding grant of summary judgment to defendant because triable issues of fact existed as to when Plaintiff's claim accrued). The Defendant's motion regarding Plaintiff's second cause of action is therefore denied.

### D.    Plaintiff's Third Cause of Action: October 2, 2000 Injury

The Plaintiff's third cause of action arises from the alleged injury he suffered from "events which culminated on October 2, 2000" as a result of the Defendant's alleged negligence in directing the Plaintiff to return to work. (See Pl.'s Mem. Opp'n at 17). On the statute of limitations defense, again Mix provides the controlling framework:

> [A] plaintiff can recover for injuries suffered during the three-year period preceding the suit, if these injuries are sufficiently distinct from those previously suffered. A plaintiff

19

can also recover for aggravation to existing injuries, provided that the aggravation was
caused by a distinct act of negligence whose existence and relationship to the injury was
unknown prior to the three-year period preceding the suit.

Mix, 345 F.3d at 90.  The Plaintiff has alleged no specific act of negligence on the part of the

Defendant that occurred on or about October 2, 2000, nor has he put forth evidence that he

suffered a distinct injury on or about October 2, 2000.  That date is simply the date on which the

Plaintiff returned to the LIRR Medical Facility with complaints of back pain.  As discussed

above, the Plaintiff testified and explained to the LIRR doctors that his back pain recurrence

began in September, which led him to see Dr. Fuzalov and obtain an MRI on September 23,

2000.

I read the Plaintiff's third cause of action as duplicative of his second claim, namely to

allege that the Defendant negligently assigned him to work intense physical labor at the LIRR

West Side Yard, which "culminated" in the herniated disk injury for which he was seen by the

LIRR medical staff on October 2, 2000.  Thus to the extent that this claim is duplicative of the

second cause of action, the Defendant's motion for summary judgment is denied for the same

reasons it was denied with respect to the second cause of action.

To the extent that the Plaintiff asserts in this third cause of action that a distinct act of

negligence by the Defendant occurred on October 2, 2000 (i.e. distinct from the act of assigning

him to work at the West Side Yard) or that he suffered a discrete injury on October 2, 2000, the

Defendant's motion for summary judgment is granted.  The Plaintiff has put forth no admissible

evidence to raise a triable issue of fact that such negligence or injury occurred on or about that

specific date, and therefore summary judgment is appropriate.

**IV.    Conclusion**

For the reasons set forth above, the LIRR's motion for summary judgment is granted in part and denied in part.  With respect to the Plaintiff's first cause of action alleging liability under FELA for injuries sustained on June 5, 2000, the Plaintiff's claim is dismissed with prejudice as time barred by FELA's three-year statute of limitations.

Plaintiff is permitted to go forward with his negligent work assignment claim as alleged in his second cause of action.  There are triable issues of fact concerning whether the Defendant negligently assigned the Plaintiff to work full unrestricted duty at some time subsequent to July 16, 2000 and whether, as a result of that alleged negligence, the Plaintiff suffered an injury distinct from the lumbosacral back sprain incurred on June 5, 2000.

As I find Plaintiff's third cause of action to be duplicative of his second claim and to raise no independent ground for relief under FELA, Defendant's summary judgment motion as to the third cause of action is granted.

The parties are hereby directed to schedule a conference before Magistrate Judge Matsumoto to prepare for trial on the remaining claim.


SO ORDERED.


Dated: January 31, 2006                              _/s/_____
         Brooklyn, N.Y.                                    Nicholas G. Garaufis
                                                                   United States District Judge